## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE
## CIVIL ACTION NO. 3:06CV-665-M

**CONNIE MARSHALL**                                                                                     **PLAINTIFF**

**v.**

**MICHAEL WILLNER** *et al.*                                                                          **DEFENDANTS**

### MEMORANDUM OPINION

Plaintiff, Connie Marshall, filed a *pro se* complaint asserting various federal claims (DN 1). She also filed an application to proceed without prepayment of fees, which was granted. Because Plaintiff is proceeding *in forma pauperis*, the Court must *sua sponte* screen the complaint pursuant to 28 U.S.C. § 1915(e)(2) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, the instant action will be dismissed.

### I. BACKGROUND AND SUMMARY OF CLAIMS

As grounds for filing this case in federal court, Plaintiff lists the following: "violations of the Federal Wiretap Act, Fraudulent Billing, Violation of the Fourth Amendment, Violation of the First Amendment and Violation of the Right to Privacy." To this end, she sues Insight Communications, AT&T Inc., Cingular Wireless, and various individual employees of these entities. She is seeking fifty million dollars in compensatory damages. Plaintiff filed a nearly identical suit against the CEO of Bellsouth Telecommunications, Inc., in August of 2005, which was dismissed for failure to state a claim approximately six months prior to her filing this action. *See Marshall v. Ackerman*, 3:05CV-548-R.

Plaintiff summarizes the factual basis for her claims in the statement of claim portion of

her complaint as follows:

> Since being a victim of a hate crime in 2004 in which Plaintiff was assaulted three times, the Plaintiff has had an illegal wiretap on all of her communication devices. This includes eavesdropping, cutting off telephone service, rerouting calls, denying long distance incoming and outgoing, stealing identity and intercepting Emails outgoing and incoming, destruction of three computers, four telephones and a fax machine and numerous other horrific violations at her home office, on her cell phone, fax machine, internet, etc.  The Plaintiff is a grandmother with no criminal background and has never committed any crimes.

To her complaint, Plaintiff attaches a "30 page log stating the history and a section for each telephone service included on this log."

Plaintiff begins the log:

> **"I FEAR FOR MY LIFE."**  I am a victim of a hate crime and the people that should be assisting me appear to be covering up.  I have been victimized and severely harassed.  I am filing this complaint because I question the motives of the EEOC, the St. Mathews Police Depart., the County Attorney's Office, the FBI, and the Federal Attorney General's Office in Louisville, Kentucky.  I have also been denied assistance by the Louisville Metro Police Department.  I also question the motives of Special Prosecutors who are not interested into looking at evidence, questioning the witnesses, bringing up the fact that the Jefferson County Attorney's Office have a conflict of interest regarding the case and the charges that were illegally changed, etc.

Plaintiff states that in May 2003 she started working at the Blue Grass Automotive dealership in Louisville, Kentucky, and that it soon became clear to her "that they did not want me working there."  Because of problems, she filed an in-house complaint, but received no assistance from the CEO.  She then reports that on April 26, 2004,

> I had my tape player sitting on my hard drive under my desk at work listening to my Tina Turner tapes, as I am a Tina Turner Impersonator and was listening to the tapes to prepare for a Derby show, in which I was to perform on the Friday before the Derby.  When I went to lunch, I pushed the wrong button and instead of turning the tape player off I inadvertently hit record.  That evening when I arrived home I begin playing my Tina Turner tapes and on one of my tapes I could hear people talking about killing me (however the tape was not clear).

She reports taking the tape to have a copy made and enhanced. From the copy, Plaintiff claims that she could hear her co-workers talking about taking her "to the KKK and killing me." She claims that she gave a copy of the tape to the CEO of Blue Grass Automotive, but nothing was done.

The next incident occurred on May 21, 2004, when while sitting at her desk working, a substance was thrown on her twice. The substance made her skin itch and burn and hair fall out. Then on May 24, 2004, bugs were thrown in her hair, and on May 26, 2004, the unknown substance was thrown on her again.

Plaintiff received what she believes to be less-than-satisfactory responses from various state and federal officials and agencies that she contacted regarding the above-described incidents. Plaintiff contends that these officials and agencies are involved in a "corruption and cover-up" against her. According to Plaintiff, part of this corruption and cover up involves an illegal wiretap on her telephone and interference with her home computer, particularly her ability to send email.

Plaintiff reports that she first became aware of the wiretap on her telephone in July/August 2004, and states that "the Louisville, Kentucky FBI are the people that are illegally tapping my telephone." At that time, Plaintiff had her phone service through Bell South. She claims that she has asked Bell South if her phone is tapped but contends that Bell South claims that it cannot give her this information. She reports that she is not a drug dealer, murderer or psychopath, and that she is "100% sure that this wiretap is related to the corruption and cover-up." She contends, "[t]here is no reason for the FBI, Police or anyone to tap my line."

A detailed and painstaking review of Plaintiff's complaint form, log, and other exhibits reveals that Plaintiff's apparent theory is that the FBI submitted "false claims" in order to obtain a court order allowing them to place a tap on Plaintiff's telephone and possibly also monitor and/or block her email and other computing activities, and presented this order to Bell South (who Plaintiff claims controls all outside lines no matter which long distance provider is selected), which in turn allowed the FBI to place a tap on Plaintiff's telephone service.

Plaintiff claims that she is often disconnected when she is attempting to call Washington, D.C., officials to report the corruption that is taking place in Louisville, Kentucky. She claims that various service providers have also heard the noises on her line but cannot give her any information; rather, claims Plaintiff, Bell South states, "if it is federal we cannot get involved." Plaintiff has switched service provides numerous times, but her problems have continued.

## II. LEGAL STANDARD

Because Plaintiff is proceeding *in forma pauperis*, this Court must review the instant action. 28 U.S.C. § 1915(e)(2); *McGore*, 114 F.3d at 604-05. Upon review, this Court must dismiss a case at any time if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). A complaint may be dismissed as frivolous if it is premised on a nonexistent legal interest or delusional factual scenario. *Neitzke v. Williams*, 490 U.S. 319, 329-30 (1989). A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted "only if it appears

4

beyond a doubt that Plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). In reviewing a complaint under this standard, the Court must accept all factual allegations contained in the complaint as true and must also construe the pleading in the light most favorable to Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

### III. ANALYSIS

**A.     Federal Wiretap Act, 18 U.S.C. §§ 2510 *et seq*.**

Title III of the Omnibus Crime Control and Safe Streets Act (referred to herein as the "Federal Wiretap Act") sets forth standards and procedures for the use of electronic surveillance, as well as criminal and civil penalties for the violation of the Act. Specifically, the Federal Wiretap Act provides for a civil cause of action under § 2520. *Lanier v. Bryant*, 332 F.3d 999, 1003 (6th Cir. 2003) (citing 18 U.S.C. § 2520). Thus, assuming that Plaintiff's allegations are true, the Court must consider whether the facts as alleged could subject Defendants to civil liability under the Federal Wiretap Act.

Section 2520 of the Federal Wiretap Act states: "Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate." Section 2511(2)(a)(ii) provides that:

> (ii) Notwithstanding any other law, providers of wire or electronic communication service, their officers, employees, and agents, landlords, custodians, or other persons, are authorized to provide information, facilities, or technical assistance to persons authorized by law to intercept wire, oral, or electronic communications or to conduct electronic surveillance, as defined in section 101 of the Foreign Intelligence Surveillance Act of 1978 [50 USCS § 1801] if such provider, its officers, employees,

5

>>or agents, landlord, custodian, or other specified person, has been provided with--
>
>>(A) a court order directing such assistance signed by the authorizing judge, or
>
>>(B) a certification in writing by a person specified in section 2518(7) of this title [18 USCS § 2518(7)] or the Attorney General of the United States that no warrant or court order is required by law, that all statutory requirements have been met, and that the specified assistance is required . . .

*Id.* This section is fatal to Plaintiff's claims against Defendants.

Plaintiff does not appear to be alleging that Defendants put a wiretap on Plaintiff's telephone line on their own initiative.[1] Rather, it appears that Plaintiff's claim is that because of her complaints (both locally and to officials in Washington, D.C.) about the FBI's failure to properly investigate the threats made on her life and the harassment and assaults she suffered from her co-workers, the Louisville, Kentucky FBI or other officials decided to tap her phone.

These facts do not state a cognizable claim against Defendants for a violation of the Federal Wiretap Act. Subsection 2511(2)(a)(ii) exempts Defendants from liability if, as Plaintiff alleges, they were presented with a order from the FBI permitting the wiretap, regardless of whether the order was obtained in violation of the law. "No cause of action shall lie in any court against any provider of wire or electronic communication service, its officers, employees, or agents, landlord, custodian, or other specified person for providing information, facilities, or

---

[1]Even if Plaintiff had made such an allegation against Defendants, it should be noted that under the Federal Wiretap Act:

>It shall not be unlawful . . . for an operator of a switchboard, or an officer, employee, or agent of a provider of wire or electronic communication service, whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the provider of that service, except that a provider of wire communication service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks.

18 USCS § 2511(2)(a)(1).

assistance in accordance with the terms of a court order, statutory authorization, or certification under this chapter." *Id.*; *see also Camacho v. Autoridad de Telefonos*, 868 F.2d 482, 489-90 (1st Cir. 1989) (holding that telephone companies entitled to immunity under the Federal Wiretap Act when acting at the direction of federal officers); *Mfr. Int'l, Ltda v. Mfr. Hanover Trust Co.*, 792 F. Supp. 180, 192 (E.D.N.Y. 1992) ("No cause of action may be maintained against private actors where they are ordered by government authorities to intercept communications."). To hold otherwise would place service providers, like Defendants, and their employees in the precarious situation of risking potential liability for following what appear to be valid court orders.

Furthermore, Plaintiff has not alleged any facts that would show that Defendants acted with bad faith and in concert with the FBI. Even considering Plaintiff's allegations in the light most favorable to Plaintiff, it does not appear that Defendants would have any reason to question law enforcement agents. As such, any claims against Defendants under the facts alleged by Plaintiff cannot survive. *See* 18 U.S.C. § 2520(d) ("A good faith reliance on-- (1) a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization; (2) a request of an investigative or law enforcement officer under section 2518(7) of this title; or (3) a good faith determination that section 2511(3) or 2511(2)(i) of this title permitted the conduct complained of; is a complete defense against any civil or criminal action brought under this chapter or any other law.")

Accordingly, for the reasons explained above, Plaintiff's Federal Wiretap Act claims against Defendants, will be dismissed with prejudice for failure to state a claim.

### B.     Violation of the Fourth Amendment, Violation of the First Amendment and Violation of the Right to Privacy

A plaintiff may file suit in federal court arising from a violation of plaintiff's constitutional rights by persons acting under the *color of federal law*. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 395 (1971). A *Bivens* action is considered the federal counterpart of a § 1983 action. *Shannon v. Gen. Elec. Co.*, 812 F. Supp. 308, 322 (N.D.N.Y. 1993).

Plaintiff's First and Fourth Amendment claims against Defendants arise out of the same set of facts described above. The Court notes that Plaintiff has failed to allege that Defendants were acting under color of federal law, and the Court is doubtful that Plaintiff would ever be able to prove this indispensable element under the facts alleged. Nevertheless, the Court need not resolve this issue. Even if the Court were to presume that Defendants were engaged in state action when they allowed the FBI (or other officials) to place a wiretap on Plaintiff's telephone, the Federal Wiretap Act exempts them from any liability under the facts as alleged by Plaintiff. *See* 18 U.S.C. § 2520 (d) ("A good faith reliance on-- (1) a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization . . . **is a complete defense against any civil or criminal action brought under this chapter or <u>any other law</u>**.") (emphasis added); *see also In re Appl. of U.S. for Order Author. Inter. of Oral Commc'n*, 545 F. Supp. 1271, 1274 (D.P.R. 1982) ("Moreover, we are aware that 18 U.S.C. 2520 provides that a good faith reliance on a court order shall constitute a complete defense to any civil or criminal action brought under 18 U.S.C. 2510, *et seq.*, or under any other law.").

Plaintiff cannot maintain a claim against Defendants under the facts alleged for the violation of **any laws**, which includes her First Amendment, Fourth Amendment, and privacy

rights claims.

## C. Fraudulent Billing Claims

Plaintiff also alleges a state law fraudulent billing claim against Defendants. The Court declines to exercise supplemental jurisdiction over those claims. Section 1367(c) of Title 28 of the United States Code provides, in pertinent part, as follows: "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Having dismissed all federal claims over which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims. 28 U.S.C. § 1367(c)(3). Consequently, the state-law claims will be dismissed without prejudice.

The Court will enter an Order consistent with this Memorandum Opinion.

Date:

cc: Plaintiff, *pro se*

4414.008

9